STRANCH, Circuit Judge,
concurring.
I join Parts II.B and III of the majority opinion, • which resolve Carpenter’s and Sanders’s statutory, evidentiary, and sentencing claims. I concur only in the judgment with respect to Part II.A because I believe that the sheer quantity of sensitive information procured without a warrant in this case raises Fourth Amendment concerns of the type the Supreme Court and our circuit acknowledged in United States v. Jones,-U.S.-, 132 S.Ct. 945, 964, 181 L.Ed.2d 911 (2012) (Alito, J., concurring), and in United States v. Skinner, 690 F.3d 772, 780 (6th Cir.2012). Though I write to address'those- concerns, particu *894 larly the nature of the tests we apply in this rapidly changing area of technology, I find it ■ unnecessary to reach a definitive conclusion on the Fourth Amendment issue. I concur with the majority on the basis that were there a Fourth Amendment violation, I would hold that the district court’s denial of Carpenter and Sanders’s motion’ to suppress was nevertheless proper because some extension of the good-faith exception to the exclusionary rule would be appropriate.
A. Fourth Amendment Concerns
At issue here is not whether the cell-site location information (CSLI) for Carpenter and Sanders could have been obtained under the Stored Communications Act (SCA). The question is whether it should have been sought through provisions of the SCA directing the government to obtain a warrant with a probable cause showing, 18 U.S.C. § 2703(c)(1)(A), or a court order based on the specified “reasonable grounds[,]” id. §§ 2703(c)(1)(B), (d). This leads us to the requirements of the Fourth Amendment.
Fourth Amendment law was complicated in the time of paper correspondence and land phone lines. The addition of cellular (not to mention internet) communication has left courts struggling to determine if (and how) existing tests apply or whether new tests should be framed. I am inclined to favor the latter approach for several reasons, particularly one- suggested by Justice Sotomayor: “[I]t may be necessary to reconsider, the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal, a great deal of information' about themselves to third parties in the course of carrying out mundane tasks.” -Jones, 132 S.Ct. at 957 (Sotomayor, J., concurring) (citations omitted).
It is easier to see why the existing tests present problems than it is to articulate a test that will not. This difficulty is exemplified by the two conceptual categories under the Fourth Amendment found in this case and the law that governs each. The majority accurately describes two different strains of law, one addressing the distinction between GPS tracking and the less accurate CSLI obtained and used in this case and the other “between the content of a communication and the information necessary to convey it.” (Majority Op. at 883.) To understand whether and how the tests established in these two different strains of Fourth Amendment law might apply requires a brief review of each.
First, the distinction between GPS tracking and CSLl acquisition. CSLI does appear to provide significantly less precise information about a person’s whereabouts than GPS and, consequently, I agree that a person’s privacy interest in the CSLI his or her cell phone generates may indeed be lesser. See, e.g., Jones, 132 S.Ct. at 955 (Sotomayor,. J., concurring) (“GPS monitoring generates a precise, comprehensive record of a person’s public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations.”); id. at 963 (Alito, J., concurring) (“For older phones, the accuracy of the location information depends on the density of the tower network, but-new ‘smart; phones,’ which .are equipped with a GPS device, permit more .precise tracking.”)..
But precision is not the only variable with legal significance. In United States v. Skinner, we addressed the government’s use of GPS data emitted by a suspect’s cell phone to track the suspect’s whereabouts over-the course of three days. Skinner, *895 690 F,3d at 774-76. The tracking took place pursuant to a court order authorizing the suspect’s phone company to provide the government access to the GPS' data emitted by the suspect’s pay-as-you-go cell phone. See id. at 776. The majority opinion there acknowledged “the concern raised by Justice Alito’s concurrence in Jones ” that long-term location monitoring in government investigations impinges on expectations of privacy, but held that the concern was not implicated in Skinner’s case because of the relatively short tracking period. Id. at 780. It distinguished Jones, explaining that “[wjhile Jones involved intensive monitoring over a 28-day period, here the DEA agents only tracked Skinner’s cell phone for three daysi Such ‘relatively short-term monitoring of a person’s movements on public streets accords with expectations of privacy that our society has recognized as reasonable.”’ Id. (quoting Jones, 132 S.Ct. at 964 (Alito, J., concurring)). But Skinner framed this conclusion with a key caveat: “There may be situations where police, using otherwise legal methods, so comprehensively track a person’s activities that the very comprehensiveness of the tracking is unreasonable for Fourth Amendment purposes.” Id.
Primarily analyzing this case under the tests established for the assertion :of a privacy interest in business records, the majority here determines that the CSLI is unprotected because it deals with routing or conveying information, not the content of the related communications. (Majority Op. at 886-88.) This analysis reflects a valid distinction in that arena of the law. It is here, however, that my concern arises with the existing tests. It seems to me that our case resides at the intersection -of the law governing tracking of personal location and the law governing privacy interests in business records. This case involves tracking physical location through cell towers and a personal phone, a device routinely carried on the individual’s person; it also involves the compelled provision of records that reflect such tracking. In light of the personal tracking concerns, articulated in our precedent, I am not convinced that the situation before us can be addressed appropriately with a test primarily used to obtain business records such as credit card purchases — records that do not necessarily reflect personal location. And it seems to" nie that the business records test is ill suited to address the issues regarding personal location that are before us. I therefore return to the law governing location.
I begin by acknowledging that this case involves CSLI that does not reach the specificity of GPS. Nonetheless, Skinner recognizes “situations where police, using otherwise' legal methods, so comprehensively track a person’s activities that the very comprehensiveness of the tracking is unreasonable for Fourth Amendment purposes.” Skinner; 690 F.3d at 780. The tracking of cell-phone data in this case went far' beyond 3 or even 28 days — the government procured approximately 127 days of CSLI records for Carpenter and 88 days for Sanders. That is close to four and three months, respectively. Even taking into account the less precise nature of CSLI as compared to GPS, such extensive monitoring far exceeds the threshold we identified in Skinner and the warrantless acquisition of such substantial quantities of CSLI implicates the Skinner/Jones concerns. I -do not think that treating the CSLI obtained as a “business record” and applying that test addresses our circuit’s stated concern regarding long-term, comprehensive tracking of an individual’s location without a warrant. At issue here is neither relatively: innocuous routing information nor precise. GPS locator information: it is personal location information *896 that partakes of both. I am also concerned about the applicability of a test that appears to admit to no limitation on the quantity of records or the length of time for which such records may be compelled. I conclude that our precedent suggests the need to develop a new test to determine when a warrant may be necessary under these or comparable circumstances.
B. The Exclusionary Rule & Good-Faith Exception
“When evidence is obtained in violation of'the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure.” Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). The exclusionary rule is not intended “t.o redress the injury to the privacy of the search victim[.] ... Instead, ■ the rule’s prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and sei-zuresf.]” United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). “As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced.” Krull, 480 U.S. at 347, 107 S.Ct. 1160.
This restriction has led the Supreme Court to articulate certain “exceptions” to the exclusionary rule. For example, in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that courts generally should not apply, the exclusionary rule to evidence obtained by police officers whose reliance on a search warrant issued by a neutral magistrate was objectively reasonable, even if the warrant was ultimately found to be defective. See Leon, 468 U.S. at 905-26, 104 S.Ct. 3405; see also id. at 926, 104 S.Ct. 3405 (“In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.”). The Court explained that “when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope[,]” “[penalizing the officer.for the magistrate’s error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.” Id. at 920-21, 104 S.Ct. 3405 (footnote omitted). In Illinois v. Krull, the Supreme Court extended the good-faith exception articulated in Leon to evidence obtained in reasonable reliance on a statute that is subsequently declared unconstitutional, reasoning “that the greatest deterrent to the enactment of unconstitutional statutes by a legislature is the power of the courts to invalidate such statutes.” Krull, 480 U.S. at 352, 107 S.Ct. 1160; see also id. at 349-350,107 S.Ct. 1160.
In the instant case, there is nothing to suggest that the FBI agents who obtained the CSLI of Carpenter and Sanders pursuant to the SCA engaged in any intentional misconduct.' Suppressing the CSLI at trial would not have the requisite deterrent effect on future unlawful conduct and application of the exclusionary rule is therefore inappropriate. See, e.g., United States v. Warshak, 631 F.3d 266, 333-34 (6th Cir.2010) (Keith, J., concurring). Assuming without deciding that this situation states a Fourth Amendment violation, I would still -affirm the district court’s denial of Carpenter and Sanders’s motion to suppress on this ground.
C. Judicial Review
One further issue of importance bears mentioning. The majority may be correct *897 that Congress is well positioned to gauge changing public attitudes toward new and evolving technology. This institutional advantage may even weigh in favor of approaching challenges to statutes that balance privacy and public safety interests with some caution. But I do not see this case primarily as a challenge to the constitutionality of the SCA’s provisions that authorize the government to seek secured communications through either an order or a warrant. The question before us is one that courts routinely answer: did the search at issue require a warrant? That the government sought and obtained an order under the SCA does not immunize that order from challenge on Fourth Amendment grounds. As relevant here, our circuit has already had occasion to weigh the propriety of an order under the SCA and to have found that order wanting. Warshak explained that “to the extent that the SCA purports to permit the government to obtain [a subscriber’s] emails [from an internet service provider] war-rantlessly, the SCA is unconstitutional.” Id. at 288. I do not read that holding as declaring the balance struck by the SCA unconstitutional. (See Majority Op. at 889-90.) Warshak simply found that one proposed interpretation or use of the SCA as applied did not comply with the Fourth Amendment’s requirement for a warrant based on probable cause. Determining the parameters of the Fourth Amendment is the task of the judiciary. See United States v. Windsor, —- U.S.-, 133 S.Ct. 2675, 2688, 186 L.Ed.2d 808 (2013) (quoting Zivotofsky v. Clinton, — U.S. -, -, 132 S.Ct. 1421, 1427, 182 L.Ed.2d 423 (2012)). The runaway pace of technological development makes this task more difficult. But the job is ours nonetheless and the circumstances béfore us lead me to believe that we have more, work to do to determine the best methods for assessing the application of the Fourth Amendment in the context of new technology.